UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Crim. No. 16-84 (WMW/JSM)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | PLEA AGREEMENT AND |
| ) | SENTENCING STIPULATIONS |
| ROBERT E. FACKLER, ) | |
| ) | |
| Defendant. ) | |

The United States of America and Robert E. Fackler (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges**. The defendant agrees to plead guilty to Count Six of the Indictment, charging him with Obstruction of an IRS Audit in violation of 26 U.S.C. § 7212(a). If at the time of sentencing the defendant has complied with this agreement, any remaining counts will be dismissed.

2. **Factual Basis**. The Defendant admits the following facts and, where the defendant lacks direct knowledge, the defendant acknowledges that the government has sufficient evidence to establish beyond a reasonable doubt the following facts, all of which constitute the factual basis for this plea. Furthermore, on the basis of the following facts, the defendant stipulates to having committed the additional offense of conspiring with

SCANNED
SEP 26 2016
U.S. DISTRICT COURT ST. PAUL

Diane Kroupa to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful functions of the Internal Revenue Service of the United States Department of the Treasury in the ascertainment and computation of income taxes in violation of Title 18, United States Code, Sections 371 and 2:

### Background

Defendant Robert E. FACKLER was married to Diane L. Kroupa. Beginning no later than the 2004 tax year and continuing through the 2010 tax year, FACKLER and KROUPA filed their federal U.S. income tax returns with the Internal Revenue Service ("IRS") under the designation "Married Filing Jointly."

During this time, FACKLER was a self-employed lobbyist and political consultant. FACKLER owned and operated a Schedule C entity known as Grassroots Consulting, the income of which was included as part of FACKLER and Kroupa's joint tax returns for tax years 2004-2010. Through Grassroots Consulting, FACKLER provided lobbying and consulting services to three primary clients. FACKLER's clients paid him as an independent contractor and reported the payments to FACKLER and the IRS via Form 1099. FACKLER was typically reimbursed by clients for meals, travel, and other expenses incurred in connection with services provided to clients.

From 2003 until June 2014, Kroupa was employed as a United States Tax Court Judge. As a Tax Court Judge, Kroupa heard and decided cases involving tax law issues, including what is required to be reported as income and what constitutes proper business deductions. Kroupa's chambers were located in Washington, D.C.

For most of the time between 2004 and 2013, FACKLER and Kroupa were residents of Minnesota. From 2004 to 2013, FACKLER and Kroupa owned a house in Plymouth, Minnesota (the "Plymouth Residence"). In addition, from about July 2007 until about August 2013, FACKLER and Kroupa leased a second residence, a house in Easton, Maryland (the "Easton Residence"). Kroupa lived at the Easton Residence while fulfilling her duties as a Tax Court Judge in Washington.

### Conspiracy to Evade the Ascertainment and Computation of Income Taxes

Beginning no later than in or about 2002 and continuing through 2012, the defendant conspired with his wife, Diane Kroupa, to impede, impair, and obstruct the Internal Revenue Service from correctly ascertaining and computing their joint income taxes.

#### *Deduction of Personal Expenses as Business Expenses*

Beginning no later than in or about 2002, FACKLER began operating Grassroots Consulting and became self-employed. Thereafter, FACKLER maintained a business checking account for Grassroots Consulting as well as one or more credit cards with which he paid Grassroots Consulting's business expenses. FACKLER also used the same credit cards and Grassroots Consulting's business checking account to pay numerous personal expenses. Each month, FACKLER transferred money from the business checking account to a personal checking account held jointly with Diane Kroupa. FACKLER generally did not write checks from or otherwise use the joint

personal checking account. Rather, Kroupa used the joint personal checking account to pay their (and her) personal expenses. In about 2002, Kroupa told FACKLER that she needed him to provide her with more money, and in response FACKLER increased the amount he regularly transferred from Grassroots Consulting's bank account to the joint personal account from about $3,000 to about $6,000 each month, which he paid out of his gross monthly income of approximately $10,000.

FACKLER did not withhold or otherwise save any of the income he earned through Grassroots Consulting in 2002 to make tax payments to the Internal Revenue Service. As a result, in or about early 2003, when FACKLER and Kroupa began to organize their tax information, they did not have sufficient funds to pay their tax obligations for the previous year. When FACKLER and Kroupa discussed this problem, Kroupa told FACKLER that it was "his problem" and that FACKLER needed to find as many deductions as possible. FACKLER understood that Kroupa was instructing him to include personal expenses on Grassroots Consulting's Schedule C as business expenses in order to reduce their joint tax burden. FACKLER collected numerous personal expenses paid through his credit cards and Grassroots Consulting's bank account, and included them along with his legitimate business deductions on a spreadsheet that purported to summarize his Schedule C business expenses. Kroupa collected additional personal expenses from their joint bank account, and hand wrote them onto the spreadsheet FACKLER prepared. FACKLER and Kroupa then input the total expense figures—which included numerous personal expenses—onto a tax

4

organizer that they provided to their tax preparer. FACKLER and Kroupa thereby significantly and fraudulently increased Grassroots Consulting's business expenses and reduced the amount of taxes they jointly owed to the IRS.

Thereafter, each year from 2003 through 2011, FACKLER and Kroupa falsely reported a significant amount of personal expenses as Grassroots Consulting business deductions. For example, FACKLER and Kroupa fraudulently claimed the following personal expenses as Schedule C business expenses associated with the operation of Grassroots Consulting:

    a.    Various personal expenses associated with the Easton Residence including rent, utilities, Internet/cable service, garbage removal, and household cleaning;

    b.    Various personal expenses associated with the Plymouth Residence including household cleaning, bathroom remodeling, new windows, interior design fees, home repair, decorating, house painting, landscaping, plumbing repairs, washer/dryer, dishwasher, garbage removal, and Internet/cable service;

    c.    Personal expenses incurred for use of furniture to "stage" the Plymouth Residence when the defendants attempted to sell the house;

    d.    Limousine and taxi fees for travel by KROUPA for Tax Court business; and

    e.    Other personal expenses incurred by or on behalf of FACKLER, KROUPA, and/or their family members, such as:

        i.    Pilates classes;
        ii.    Spa and massage fees;
        iii.    Jewelry and personal clothing;
        iv.    Wine club fees and purchases at wineries;
        v.    Airfare, hotel, and other expenses for vacations to, among other locations:

        (1) Alaska;
        (2) Australia;
        (3) Bahamas;
        (4) China;
        (5) England;
        (6) Greece;
        (7) Hawaii;
        (8) Mexico; and
        (9) Thailand;

vi. Chinese tutoring;
vii. Music lessons;
viii. Personal computers;
ix. Family and graduation photos;
x. Christmas cards;
xi. Household items;
xii. Groceries;
xiii. Dry cleaning and laundry; and
xiv. Personal cellular telephone charges.

The method by which FACKLER and Kroupa compiled personal expenses to be inserted into Grassroots Consulting's Schedule C evolved as time went on. However, each year FACKLER generally reviewed business bank records, credit card records, and receipts to compile his business expenses, as well as numerous personal expenses, into a spreadsheet. The spreadsheet listed certain categories of expenses and the total amount of expenses purportedly incurred under each category. Kroupa typically prepared handwritten summaries of additional personal expenses from their joint personal bank account, and categorized them falsely according to Grassroots Consulting Schedule C's business expense categories. FACKLER either added the amounts from Kroupa's handwritten summaries to his spreadsheet and provided the totals to their tax preparer, or else provided the spreadsheet to Kroupa, who added personal expenses to the totals listed

in FACKLER's spreadsheet and provided the combined amounts to their tax preparer. In some years, FACKLER and/or Kroupa wrote the inflated totals into a tax organizer that they then gave to their tax preparer, and in other years they simply provided the summary spreadsheet to the tax preparer. Neither FACKLER nor Kroupa revealed to the tax preparer that the amounts reflected in the spreadsheet and tax organizer included personal expenses disguised as business expenses.

In total, from 2004 through 2010, the defendants fraudulently deducted at least $500,000 of personal expenses as purported Schedule C business expenses. As a result, the defendants caused the amount of adjusted gross income, taxable income, and total tax shown on their income tax returns to be falsely and significantly understated.

### *Concealment of Reimbursed Expenses for Grassroots Consulting*

As part of the conspiracy, FACKLER also purposely caused the gross receipts attributable to Grassroots Consulting to be falsely understated by fraudulently deducting purported business expenses, such as travel and meals, for which FACKLER had previously received reimbursement from his clients. In total, FACKLER understated Grassroots Consulting's gross receipts by approximately $450,000. As a result, the defendants caused the amount of adjusted gross income, taxable income, and total tax shown on their income tax returns to be falsely understated.

### *Deduction of Personal Expenses as Unreimbursed Employee Expenses*

As part of the conspiracy, Kroupa falsely reported certain personal expenses as "Unreimbursed Employee Expenses" incurred in connection with her employment as a

7

United States Tax Court Judge. For example, Kroupa fraudulently claimed the following personal expenses as Unreimbursed Employee Expenses:

    a.    Personal grooming services for family members;
    b.    "Nantucket" bags for herself and other family members;
    c.    Purchases at Barnes & Noble for family members;
    d.    Various personal meals; and
    e.    Household decorations.

As a result, the defendants caused and attempted to cause the amount of taxable income and total tax shown on certain of their tax returns to be falsely understated.

### *Unreported Income from South Dakota Land Sale*

As part of the conspiracy, Kroupa purposely failed to report approximately $44,520 that she received in 2010 in connection with the sale of a parcel of real estate located in South Dakota. As a result, the defendants caused the amount of adjusted gross income, taxable income, and total tax shown on their income tax returns to be falsely understated.

### *Cancellation of Indebtedness Income*

As part of the conspiracy, Kroupa falsely claimed that approximately $33,031 of cancellation of indebtedness income that she and FACKLER received from Bank of America in 2008 was not taxable because the defendants were financially insolvent. In fact, they had substantial assets that exceeded their liabilities, including retirement accounts, property, and investment accounts, rendering them solvent within the meaning of the tax code. As a result, the defendants caused the amount of adjusted gross income, taxable income, and total tax shown on their 2008 income tax returns to be falsely understated.

**False and Misleading Representations During 2006 Audit**

In or about 2006, FACKLER and Kroupa caused false and misleading representations to be made to the IRS Tax Compliance Officer who was conducting an audit of FACKLER and Kroupa's tax returns for the calendar years 2004 and 2005. Specifically, in response to inquiries and requests for documentation relating to Grassroots Consulting's business deductions, FACKLER and Kroupa caused their tax preparer to represent to the IRS Tax Compliance Officer that many of the expenses claimed on their tax returns were legitimate business deductions but FACKLER kept poor records. These representations were false—the expenses were personal in nature—although the tax preparer was unaware of this fact. Rather than provide the documents requested by the Tax Compliance Officer, which would have shown that the deductions were fraudulent, FACKLER and Kroupa concealed the records from both the tax preparer and the Tax Compliance Officer, telling both that they had failed to keep records related to the claimed expenses. At the conclusion of the 2006 Audit, FACKLER and Kroupa acknowledged tax deficiencies in the amount of approximately $48,000 (including interest and penalties) and they were issued an "Inadequate Records Notice" by the IRS informing the defendants that they had not been keeping adequate records of their business expenses.

**Obstruction and False Representations During 2012 Audit**

As part of the conspiracy, in or about 2012, FACKLER and Kroupa caused false and misleading representations to be made, and caused false and misleading documents to be delivered, to the IRS Revenue Agent conducting an audit of FACKLER and Kroupa's

9

tax returns for the tax years 2009 and 2010. Specifically, after learning of the audit and the IRS Revenue Agent's requests for documents pertaining to their tax returns, FACKLER and Kroupa together reviewed their tax files, and Kroupa removed certain items requested by the Revenue Agent from the tax files because they could reveal the fact that FACKLER and Kroupa had inappropriately deducted numerous personal expenses. FACKLER and Kroupa then provided to their tax preparer, knowing that he would then provide to the IRS Revenue Agent, typed and handwritten documents purporting to summarize business expenses incurred by Grassroots Consulting that were, in fact and as they knew, personal expenses incurred by FACKLER, Kroupa, and their family members.

During the audit, FACKLER (with Kroupa's knowledge) prepared cut-and-pasted credit card statements that purported to substantiate certain of the business expense deductions taken by Grassroots Consulting in 2009 and 2010, which as they knew represented personal expenses, knowing and intending that such documents would be provided in whole or in part to the IRS.

Additionally, in response to a written inquiry from an IRS Revenue Agent regarding the nature of certain purported Grassroots Consulting payments to "service providers," FACKLER and Kroupa together concocted false explanations, and FACKLER wrote those false explanations on an IRS-prepared spreadsheet, justifying each category of payments as legitimate business expenses when, in fact and as they knew, many of the questioned payments were personal in nature.

During the audit, in response to an inquiry from an IRS Revenue Agent regarding a deposit into her bank account in the amount of approximately $44,520 in July 2010, Kroupa sent an email to their tax preparer falsely and misleadingly informing the tax preparer that the deposit was part of an unrelated inheritance and not income received as part of a land sale by Kroupa in South Dakota.

When FACKLER and Kroupa learned that the 2012 audit might progress into a criminal investigation, Kroupa instructed FACKLER to lie to the IRS. Believing that the investigation would focus solely on the false business deductions taken by FACKLER's company, Grassroots Consulting, Kroupa told FACKLER to tell the investigating authorities that Kroupa had no role in organizing or preparing the Grassroots Consulting portion of their joint tax return. On multiple occasions thereafter, Kroupa continued to insist that FACKLER falsely exculpate Kroupa.

**Total Tax Loss**

Each tax year from 2004 through 2010, FACKLER and Kroupa provided false information to their tax preparer and caused false tax returns that significantly understated their adjusted gross income, taxable income, and total tax to be filed with the Internal Revenue Service. Through the means described above, from 2004 through 2010, FACKLER and KROUPA purposely understated their taxable income by approximately $1,000,000 and purposely understated the amount of tax they owed by at least $450,000.

3. **Statutory Penalties**. The defendant understands that the maximum statutory penalty for violation of 26 U.S.C. § 7212(a) is as follows:

    a. a term of imprisonment of up to 3 years;

    b. a criminal fine of up to $250,000.00;

    c. a term of supervised release of up to one year;

    d. a special assessment of $100.00, which is payable to the Clerk of Court prior to sentencing; and

    e. the costs of prosecution (as defined in 28 U.S.C. § 1918(b) and 1920).

4. **Revocation of Supervised Release**. The defendant understands that, if he were to violate any condition of supervised release, he could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

5. **Guideline Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, et seq. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines to determine the appropriate sentence and stipulate to the following guideline calculations:

    a. Base Offense Level. The parties agree and stipulate that appropriate Guidelines section is § 2T1.1, and the base offense level is 18 because the tax loss resulting from the offense of conviction and stipulated conduct is more than $250,000 but less than $550,000. (U.S.S.G. §§ 2T1.1(a)(1) and 2T4.1(G)).

b. <u>Chapter Three Adjustments</u>.

(1) <u>Obstruction of Justice</u>. The parties agree that the defendant willfully obstructed or impeded the administration of justice with respect to the investigation of the offense of conviction and relevant conduct, and the offense level should therefore be increased by 2 levels. (U.S.S.G. § 3C1.1). The parties stipulate and agree that this Guidelines enhancement applies even though the defendant is pleading guilty to Obstruction of a Tax Audit, in violation of Title 26, United States Code, Section 7212(a), in light of the dismissal of the other charges in the indictment. (U.S.S.G. § 1B1.2(c)).

(2) <u>Acceptance of Responsibility</u>. In exchange for the defendant's plea and provided that the defendant does not falsely deny any offense or relevant conduct, the government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility and to make any appropriate motions with the Court. However, the defendant understands and agrees that this recommendation is conditioned upon the following: (i) the defendant testifies truthfully during the change of plea hearing, (ii) the defendant cooperates with the Probation Office in the pre-sentence investigation, (iii) the defendant commits no further acts inconsistent with acceptance of responsibility, and (iv) the defendant complies with this agreement, fully identifies all assets and makes good faith efforts to make restitution to his victims. (U.S.S.G. § 3E1.1). The defendant timely notified the government of his intent to plead guilty, and therefore the government will make a motion to reduce the offense level by an additional 1 point pursuant to U.S.S.G. § 3E1.1(b).

c. <u>Other Enhancements/Adjustments</u>. The parties agree that, based on the information available at this time, there are no other applicable enhancements or adjustments to the offense level. This does not constitute a stipulation, but a belief based on an assessment of the information currently known.

d. <u>Criminal History Category</u>. Based on information available at this time, the parties believe that the defendant's criminal history category is I. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. Defendant's actual criminal history and related status will be determined by the Court

    based on the information presented in the Presentence Report and by the parties at the time of sentencing.

  e. <u>Guideline Range</u>.  If the adjusted offense level is **17**, and the criminal history category is **I**, the Sentencing Guidelines range is **24-30 months** imprisonment.

  f. <u>Fine Range</u>.  The statutory maximum fine is $250,000.  (U.S.S.G. § 5E1.2, Application Note 2; 26 U.S.C. § 7212(a); 18 U.S.C. § 3559(a)(5); 18 U.S.C. § 3571(b)(3)).

  g. <u>Supervised Release</u>.  The Sentencing Guidelines require a term of supervised release of one and three years.  (U.S.S.G. § 5D1.2).

  h. <u>Departures and Sentencing Recommendations</u>.  The parties reserve the right to make motions for departures or variances from the applicable guideline.

6. **Discretion of the Court**.  The foregoing stipulations are binding on the parties, but do not bind the Court.  The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion.  The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category.  The Court may also depart from the applicable guidelines.  If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

7. **Special Assessments**.  The Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the defendant is

convicted. U.S.S.G. § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

8. **Restitution**. Defendant understands and agrees that he will pay restitution pursuant to 18 U.S.C. § 3663(a)(3) in the total amount of the tax loss caused by his conduct.

9. **Complete Agreement**. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

Date: 9/23/2016

ANDREW M. LUGER
United States Attorney

BY: _____
BENJAMIN F. LANGNER
TIMOTHY C. RANK
Assistant U.S. Attorneys

Date: 9/23/16

_____
ROBERT E. FACKLER
Defendant

Date: 9/23/2016

_____
THOMAS BREVER
Attorney for Defendant

15