UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------
                                    )
United States of America,   )  File No. 16-CR-84
                                    )       (WMW/KMM)
        Plaintiff,        )
                                    )
vs.                        )  St. Paul, Minnesota
                                  )  October 21, 2016
Diane L. Kroupa,        )  1:33 p.m.
                                  )
        Defendant.        )
                                    )
------------------------------------------------------------

BEFORE THE HONORABLE WILHELMINA M. WRIGHT
UNITED STATES DISTRICT COURT JUDGE

**(CHANGE OF PLEA HEARING)**

APPEARANCES
  For the Plaintiff:         U.S. Attorney's Office
                               BENJAMIN F. LANGNER, AUSA
                               600 U.S. Courthouse
                               300 South Fourth Street
                               Minneapolis, Minnesota 55415

  For the Defendant:         Kelly & Jacobson
                                 THOMAS M. KELLY, ESQ.
                               Suite 420
                               200 South Sixth Street
                               Minneapolis, Minnesota 55402

  Court Reporter:            LORI A. SIMPSON, RMR-CRR
                               Suite 146
                               316 North Robert Street
                               St. Paul, Minnesota 55101

Proceedings recorded by mechanical stenography;
transcript produced by computer.

1                    **P R O C E E D I N G S**

2                         **IN OPEN COURT**

3          (Defendant present)

4              THE CLERK:  The case before us today is the United

5      States of America vs. Diane L. Kroupa.

6              Counsel, will you please come forward with the

7      defendant and identify yourself for the record.

8              MR. LANGNER:  Good afternoon, Your Honor.  Ben

9      Langner on behalf of the United States.

10             THE COURT:  Thank you.

11             MR. KELLY:  Good afternoon, Your Honor.  Thomas

12     Kelly on behalf of the defendant, who is present.

13             THE COURT:  Thank you.

14             THE DEFENDANT:  Good afternoon, Your Honor.

15             THE COURT:  Good afternoon, Ms. Kroupa.

16             And Ms. Kroupa, I understand that you are here

17     today because you have decided to enter a guilty plea in

18     this case; is that correct?

19             THE DEFENDANT:  Correct.

20             THE COURT:  So before I accept your guilty plea, I

21     must ask you several questions and you must answer those

22     questions under oath.  So Ms. Bender, my courtroom deputy,

23     will swear you in at this time.

24             THE CLERK:  Will you please raise your right hand.

25         (Defendant sworn)

1                          **EXAMINATION**

2       BY THE COURT:

3       Q.  Ms. Kroupa, you do now understand that you are under

4       oath.  And because you are now under oath, if you say

5       anything at this hearing that is not true, you could be

6       prosecuted for a separate crime.  That crime is perjury.

7       And the government could use any false statements that you

8       give under oath against you in that prosecution, so it's

9       very important for you to be truthful in everything that you

10      say today.  Do you understand?

11      A.  I understand, Your Honor.

12      Q.  And the most important thing for you to understand is

13      that if you plead guilty and if I accept your guilty plea,

14      you will not be able to change your mind and take back your

15      guilty plea.

16      A.  I understand, Your Honor.

17      Q.  So if anything happens that confuses you or that worries

18      you, you should get help from your attorney or from me

19      before you plead guilty.  Because after you plead guilty, it

20      may be too late for us to help you with those questions.  Do

21      you understand, Ms. Kroupa?

22      A.  I do, Your Honor.

23      Q.  Now, if during the course of our proceeding today you

24      wish to speak with Mr. Kelly, your attorney, you're welcome

25      to do so.  If I ask you a question and you're not certain

1    whether to answer it or how to answer it, just let me know

2    and you will be able to speak with Mr. Kelly privately and

3    confidentially and then you can let me know when you're

4    ready to proceed again.  I don't mind waiting.  This is an

5    important matter and I want you to be comfortable, I want

6    you to understand what's going on, and I want you to have

7    the benefit of your counsel's advice.  Do you understand?

8    A.  Yes.  Thank you, Your Honor.

9    Q.  You're welcome.

10          Now, I have to begin by asking you a few questions

11   to make certain that you're competent to enter a guilty

12   plea.

13          So will you please state your full name.

14   A.  Diane Lynn Kroupa.

15   Q.  And Ms. Kroupa, have you used any other name?

16   A.  No.

17   Q.  How old are you?

18   A.  61.

19   Q.  And would you tell us how far you went in school.

20   A.  I went through law school.

21   Q.  Okay.  Are you a United States citizen?

22   A.  I am.

23   Q.  And do you have any trouble speaking or understanding

24   the English language?

25   A.  No.

1   Q.  Okay.  You're able to read well based on your

2   educational credentials, that's a correct assumption for me

3   to make?

4   A.  Good assumption, Your Honor.

5   Q.  Okay.  And you're not under the influence of alcohol?

6   A.  No alcohol.

7   Q.  Have you had any alcohol in the past 24 hours?

8   A.  No.  I have two years being sober.

9   Q.  Very good.

10          Now, I also have to ask you a few questions about

11  drug use.  When I say "drug," I mean any drug, so that could

12  be prescription medication or over-the-counter medication

13  that you might take.

14          Are you under the influence of any drug or

15  medication at this time?

16  A.  Yes, Your Honor.

17  Q.  Okay.  You've taken --

18          (Defense counsel and defendant confer)

19  A.  Excuse me, Your Honor.  I misunderstood.  I am not under

20  the influence of any -- it's not -- my ability to understand

21  what I am doing is not impaired.

22  Q.  Okay.  I'm going to ask you a little bit about the

23  medication that you've taken over the past 24 hours.  Would

24  you tell me what type of medication that is.

25  A.  Yes.  I'm being treated for anxiety, depression, and

1    bipolar II.  I have six medications, prescribed medications,

2    that I take.  They are Depakote, which is for my bipolar II

3    and my depression; Lamictal --

4              MR. KELLY:  Maybe you should spell them.

5    A.  Would it be helpful if I spelled the names of the drugs?

6    Q.  It would be helpful.

7    A.  Depakote is D-e-p-a-k-o-t-e.  Lamictal, L-a-m-e-c-t-a-l

8    [sic], I'm taking that for anxiety, bipolar II, and mood

9    stabilizer.  Wellbutrin, W-e-l-l-b-u-t-i-n [sic], it's for

10   depression.  Propra -- I don't even know how to pronounce

11   this.  I'm just going to spell it.

12   Q.  You can just spell it.

13   A.  P-r-o-p-r-a-n-o-l-o-l, which is for mood stabilizing and

14   anxiety.  Seroquel, S-e-r-o-q-u-e-l, I take for bipolar II,

15   depression, and anxiety.  And then Levothyroxine,

16   L-e-v-o-t-h-y-r-o-x-i-n-e, I take that for a thyroid issue.

17   Q.  Okay.  So you've described several medications.  Will

18   any of that medication impair your ability to understand

19   what we're doing here today?

20   A.  No, Your Honor.

21   Q.  Okay.  And are you generally in good health?

22   A.  Yes, I am.

23   Q.  Okay.  And you're able to think clearly today; is that

24   correct?

25   A.  I am.

1    Q.  Now, you're represented by Mr. Kelly.  Have you fully

2    discussed the charges against you with Mr. Kelly?

3    A.  I have, Your Honor.

4    Q.  And have you told Mr. Kelly everything that you want him

5    to know about this case?

6    A.  I have, Your Honor.

7    Q.  Are you fully satisfied with the services, the legal

8    services, that you've received from Mr. Kelly?

9    A.  I am.

10              THE COURT:  Mr. Kelly, have you had sufficient

11   time to investigate the law and the facts of Ms. Kroupa's

12   case and to discuss it with Ms. Kroupa?

13              MR. KELLY:  I believe I have, Your Honor.

14              THE COURT:  And based on your discussions, are you

15   satisfied that Ms. Kroupa understands the charges against

16   her and the range of punishments that she faces?

17              MR. KELLY:  I believe Ms. Kroupa does understand,

18   Your Honor.

19              THE COURT:  And based on your dealings with

20   Ms. Kroupa, are you satisfied that she's competent to make a

21   decision about whether to plead guilty today?

22              MR. KELLY:  Quite satisfied.

23   BY THE COURT:

24   Q.  Ms. Kroupa, you've told me that you wish to enter a

25   guilty plea today.  If you do enter that guilty plea, you

1    will be giving up a number of very important rights.  The

2    law requires me to review those rights with you before I

3    make a final -- before you make a final decision about

4    whether to plead guilty, and I'm going to review those with

5    you now.

6            Do you understand that you have the right to

7    continue to plead not guilty to the charges that have been

8    lodged against you?

9    A.  I do, Your Honor.

10   Q.  Do you understand that you have the right to be tried by

11   a jury that would be made up of 12 citizens of this

12   district?

13   A.  I do, Your Honor.

14   Q.  You have the right to a speedy trial, which means that

15   if you did want to take your case to trial, your trial would

16   begin in the next few months.  In fact, your trial was

17   scheduled to begin December 5, 2016.  You wouldn't have to

18   wait longer than that.  Do you understand?

19   A.  I do, Your Honor.

20   Q.  And you also have the right to be represented by an

21   attorney at every stage of this proceeding, so that would be

22   before trial, during trial, and after trial.  Do you

23   understand?

24   A.  I do, Your Honor.

25   Q.  You have the right to be represented by an attorney that

1   you hire; or if you could not afford an attorney or to hire

2   an attorney, you have the right to be represented by an

3   attorney who is appointed to represent you at no cost to

4   you.  Do you understand?

5   A.  I understand, Your Honor.

6   Q.  At trial you would be presumed innocent and I would

7   instruct the jurors that they must presume that you are

8   innocent.  Do you understand?

9   A.  I understand, Your Honor.

10  Q.  And the burden would be on the government to prove your

11  guilt, not on you to prove your innocence.  You would not

12  have to prove anything at trial.  Do you understand that?

13  A.  I do, Your Honor.

14  Q.  Not only would the burden be on the government to prove

15  your guilt, but the government would have to prove your

16  guilt beyond a reasonable doubt.  Do you understand?

17  A.  I do, Your Honor.

18  Q.  I would instruct the jurors that unless they were

19  convinced of your guilt beyond a reasonable doubt, they

20  would have to find you not guilty if you went to trial.  Do

21  you understand that?

22  A.  I do.

23  Q.  If you did go to trial the government would seek to

24  prove your guilt by calling witnesses, who would come here

25  to court and testify against you, and you would have the

1    right to confront those witnesses.  That means that you

2    would have the right to be physically present here in the

3    courtroom whenever anyone testified against you so that you

4    could see and hear the testimony for yourself.  Do you

5    understand?

6    A.  I do, Your Honor.

7    Q.  It also means that your attorney would have the right to

8    ask questions of anyone who testified at your trial to try

9    to show weaknesses in their testimony.  Do you understand

10   that?

11   A.  I do, Your Honor.

12   Q.  You'd also have the right to remain silent at your

13   trial.  No one could force you to testify, and whether to

14   testify or not to testify would be entirely your decision to

15   make.  Do you understand?

16   A.  I do, Your Honor.

17   Q.  If you decided not to testify, your silence could not be

18   used against you.  In fact, if you wanted me to, I would

19   instruct the jurors of that and tell them that when they are

20   deciding whether you had been proven guilty beyond a

21   reasonable doubt, they could not consider the fact that you

22   chose not to testify.  Do you understand that?

23   A.  I do, Your Honor.

24   Q.  Although you would not have to testify at trial or call

25   any witnesses or present any evidence, you would have the

1    right to do any or all of those things if you wished.  Do

2    you understand?

3    A.  I do, Your Honor.

4    Q.  You would have the right to take the stand and testify

5    before the jury on your own behalf and tell the jurors your

6    side of the story.  Do you understand?

7    A.  I do, Your Honor.

8    Q.  You'd have the right to call others to testify on your

9    behalf and, in fact, you could subpoena witnesses.  In other

10   words, you could get a court order from me forcing a witness

11   to testify at your trial whether that person wanted to or

12   not.  Do you understand?

13   A.  I do, Your Honor.

14   Q.  And if you did testify or call witnesses or present any

15   evidence at your trial, that would not change the burden of

16   proof.  The government would still have the burden of

17   proving your guilt beyond a reasonable doubt.  Do you

18   understand, Ms. Kroupa?

19   A.  I do, Your Honor.

20   Q.  If you went to trial, you could not be convicted of any

21   charge unless every single member of the jury found that you

22   had been proven guilty of that charge beyond a reasonable

23   doubt.  In other words, any guilty verdict would have to be

24   unanimous, all 12 jurors would have to agree.  Do you

25   understand?

1    A.  I do, Your Honor.

2    Q.  And finally, if you plead guilty and if I accept your

3    guilty plea, you will be convicted of the charge to which

4    you plead guilty.  You will not get a trial on that charge;

5    you will give up all of the other rights that I have just

6    described; and you will give up your right to file any

7    motions before trial, such as motions asking me to rule that

8    certain evidence cannot be used against you.  Do you

9    understand that if you plead guilty and I accept your guilty

10   plea, you will be giving up all of these rights?

11   A.  I do, Your Honor.

12   Q.  So, Ms. Kroupa, have you received a copy of the

13   indictment, which is the written charges that the government

14   has made against you?

15   A.  Yes, I received it at some point.

16   Q.  Have you read that indictment?

17   A.  I have, Your Honor.

18   Q.  And has Mr. Kelly explained the charges against you in

19   the indictment?

20   A.  I believe he has.

21   Q.  Okay.  Has Mr. Kelly answered all of your questions

22   about the charges in the indictment?

23   A.  Yes.

24          THE COURT:  Mr. Kelly, does Ms. Kroupa waive her

25   right to have the indictment read?

1          MR. KELLY:  She does, Your Honor.

2     BY THE COURT:

3     Q.  Ms. Kroupa, I'm going to now review with you the nature

4     of the charges.  You've been charged with the following six

5     counts in the indictment:

6          Count 1 of the indictment charges you with

7     conspiracy to defraud the United States in violation of

8     Title 18, United States Code, Section 371.  Under this

9     provision it is a crime for two or more people to commit a

10    crime.  For you to be convicted of this charge -- I'm sorry.

11    It's a crime for two or more people to agree to commit a

12    crime.  So the agreement is the material piece.

13          For you to be convicted of this charge the

14    government would have to prove beyond a reasonable doubt

15    four elements:  First, that beginning on or before 2004 and

16    continuing at least until in or before 2012, in the state

17    and district of Minnesota, you and Robert Fackler reached an

18    agreement to commit the crime of evading the ascertainment

19    and computation of your joint income taxes as alleged in the

20    indictment; second, that you voluntarily and intentionally

21    joined in the agreement either at the time the agreement was

22    reached or at some later time while the agreement was still

23    in effect; third, that at the time you joined in the

24    agreement you knew the purpose of the agreement; and fourth,

25    while the government was -- while the agreement was in

1    effect, a person who had joined the agreement knowingly did

2    one or more acts for the purpose of carrying out or carrying

3    forward the agreement.

4            Counts 2 and 3 of the indictment charge you with

5    tax evasion in violation of Title 26, United States Code,

6    Section 7201.  Count 2 alleges tax evasion for the calendar

7    year of 2009.  Count 3 alleges tax evasion for the calendar

8    year of 2010.

9            For you to be convicted of these charges the

10   government would have to prove beyond a reasonable doubt as

11   to each count three elements:  First, that you owed

12   substantial income tax in addition to the amounts reported

13   on your tax returns in calendar year 2009 and calendar year

14   2010; second, that you attempted to evade and defeat that

15   additional tax; and third, that you acted willfully and

16   within the state and district of Minnesota.

17           Counts 4 and 5 of the indictment charge you with

18   making and subscribing a false return in violation of

19   Title 26, United States Code, Section 7206(1).  Count 4

20   alleges that you filed a false Form 1040 Individual Income

21   Tax Return in 2009 and Count 5 alleges that you filed a

22   false Form 1040 Individual Income Tax Return in 2010.

23           For you to be convicted of these charges the

24   government would have to prove beyond a reasonable doubt as

25   to each of five elements:  First, that you made and signed a

1    Form 1040 Individual Income Tax Return for the years in

2    question that included false information regarding your

3    income; second, the returns contained written declarations

4    signed under the penalty of perjury; third, that you did not

5    return -- believe the return to be true and correct as to

6    reported net profits and income; fourth, that you acted

7    willfully and within the state and district of Minnesota;

8    and fifth, the false matter included in the Form 1040

9    Individual Tax Returns for the years in question was

10   material.

11        Count 6 of the indictment charges you with

12   obstruction of an Internal Revenue Service audit in

13   violation of Title 26, United States Code, Section 7212(a).

14        For you to be convicted of this charge the

15   government would have to prove beyond a reasonable doubt

16   three elements:  First, that beginning in or about January

17   2012 and continuing until in or about November 2012, in the

18   state and district of Minnesota, you acted, that is,

19   endeavored, with the purpose to obstruct or impede the due

20   administration of the internal revenue laws, which includes

21   the Internal Revenue Service's lawful functions to ascertain

22   income and compute, assess, and collect income taxes;

23   second, that you acted corruptly, that is, with the purpose

24   to obtain an unlawful benefit for yourself or someone else,

25   regardless of success, by providing false information to the

1    IRS at a time when the IRS was conducting an audit of your

2    tax returns for the calendar years 2009 and 2010; and third,

3    that your efforts had a reasonable tendency to obstruct or

4    impede the due administration of the internal revenue laws.

5         Do you understand that these are the charges

6    against you?

7    A.   I do, Your Honor.

8    Q.   Under the plea agreement you would plead guilty to

9    Count 1 of the indictment.  If you plead guilty to Count 1

10   of the indictment charging you with conspiring to defraud

11   the United States, you will be facing the following

12   penalties:

13        Imprisonment of up to a maximum of five years,

14   supervised release of up to a maximum of three years, a fine

15   of up to $250,000, a mandatory special assessment of $100

16   due at the time of sentencing.  The government has requested

17   restitution in the total amount of the tax loss caused by

18   your conduct pursuant to Title 18, United States Code,

19   Section 3663(a)(3).  And finally, I could order you to pay

20   the costs of prosecuting you.

21        Do you understand that these are the penalties

22   that can be imposed on you if you plead guilty?

23   A.   I do, Your Honor.

24   Q.   I want to address supervised release at this time.

25   Supervised release is what happens after you are released

1    from prison.  I will decide how long you will serve on

2    supervised release and I will also decide what conditions

3    you must follow while you are on supervised release.

4             If you violate any of the conditions of your

5    supervised release, you could be sent back to prison and

6    kept in prison for up to three years, depending on the

7    length of your supervised release term, without getting

8    credit for the time that you already served on supervised

9    release.  Do you understand that?

10   A.  I do, Your Honor.

11   Q.  I also must advise you that there is no parole in the

12   federal prison system.  So if you're sentenced to prison,

13   you will serve your full sentence.  You will not be released

14   early on parole.  Do you understand, Ms. Kroupa?

15   A.  I do, Your Honor.

16   Q.  Also, because you are a United States citizen and

17   because you have been charged with a felony, if you plead

18   guilty you may lose your right to vote, to hold public

19   office, to serve on a jury, and to possess any kind of

20   weapon or ammunition.  Do you understand?

21   A.  I do, Your Honor.

22   Q.  Now, Ms. Kroupa, I understand that you've entered into a

23   plea agreement with the government; is that correct?

24   A.  I have, Your Honor.

25   Q.  Have you read the plea agreement?

1    A.  I have, Your Honor.

2    Q.  Has Mr. Kelly, your attorney, carefully gone through the

3    plea agreement with you and explained all of its terms?

4    A.  He has, Your Honor.

5    Q.  Has Mr. Kelly answered all of your questions about the

6    plea agreement?

7    A.  He has, Your Honor.

8    Q.  Do you understand the terms of the plea agreement?

9    A.  I do, Your Honor.

10   Q.  Just to avoid any misunderstanding, I'm going to ask

11   counsel here from the United States Attorney's Office to

12   describe any important provisions in the plea agreement that

13   I have not already covered other than the factual basis,

14   which we'll go into shortly.

15            MR. LANGNER:  Your Honor, would you like me to do

16   that as a colloquy with the defendant?

17            THE COURT:  Yes, please.

18            MR. LANGNER:  Would you like me to cover the

19   factual basis in detail at this time or wait until --

20            THE COURT:  We'll wait on the factual basis.

21                          **EXAMINATION**

22   BY MR. LANGNER:

23   Q.  Ms. Kroupa, I'm going to ask you just a few questions

24   about the plea agreement that you've entered into or that

25   you intend to enter into with the government.  Okay?

1    A.  All right.

2    Q.  And the purpose of this is to make sure that any terms

3    in here of significance, you both understand them and it's

4    clear to all the parties what those mean.  Do you understand

5    that?

6    A.  I do.

7    Q.  And as the Court mentioned earlier, you will be pleading

8    guilty to Count 1 of the indictment, which charges you with

9    conspiring to defraud the United States, correct?

10   A.  Yes.

11   Q.  And in exchange, if at the time of sentencing you have

12   complied with this agreement, all of the remaining counts

13   against you will be dismissed at that time.  Do you

14   understand that?

15   A.  I understand.

16   Q.  Moving on to the sentencing guidelines, you understand

17   the sentencing guidelines are a factor that the Court will

18   consider when deciding what sentence to impose?

19   A.  I understand.

20   Q.  And we've had some discussions with you and you've

21   agreed to the calculations under those sentencing

22   guidelines, correct?

23   A.  Yes.

24   Q.  And I'm going to recap those now.  You've agreed and the

25   government has agreed that the base offense level should be

1    calculated under 2T1.1, which is the section related to tax

2    crimes.  Do you understand that?

3    A.  I understand.

4    Q.  And the base offense level, the parties have agreed, is

5    18 because the tax loss resulting from your offense is more

6    than $250,000 but less than $550,000, correct?

7    A.  I understand.

8    Q.  And the parties have also agreed that the offense level

9    will be increased by two levels because you abused a

10   position of public trust in a manner that significantly

11   facilitated the commission or concealment of the offense.

12   Do you understand that?

13   A.  I understand.

14   Q.  The offense level will also be increased by two

15   additional levels because you willfully obstructed or

16   impeded the administration of justice with respect to the

17   investigation of the offense of conviction and any relevant

18   conduct.  Do you understand that?

19   A.  I understand.

20   Q.  And the government has agreed, provided that you comply

21   with the conditions that are listed on page 11 under

22   Acceptance of Responsibility, that the offense level will be

23   reduced by three levels for your acceptance of

24   responsibility.  Do you understand that?

25   A.  I understand.

1    Q.  And the parties have agreed that we don't believe any

2    other enhancements under the sentencing guidelines apply at

3    this time, correct?

4    A.  I understand.

5    Q.  And if all of those calculations are correct, we would

6    arrive at an offense level of 19.  Do you understand that?

7    A.  I understand.

8    Q.  We believe that your Criminal History Category is a I,

9    which is the lowest level of criminal history.  Do you

10   understand that?

11   A.  I understand.

12   Q.  And if those calculations are deemed to be correct, then

13   you would have an offense level of 19, a Criminal History

14   Category of I, which would provide an advisory sentencing

15   guidelines range of 30 to 37 months imprisonment.  Do you

16   understand that?

17   A.  I understand.

18   Q.  And you understand that that range, it's an advisory

19   range?  The Court will consider that, but it may enter a

20   sentence below that or even above that or within the range.

21   That's completely up to the Court.

22   A.  I understand.

23   Q.  One other fact that I just want to cover.  You've agreed

24   to pay restitution in the amount of your tax loss in this

25   case, correct?

1     A.  I have.

2     Q.  Now, the amount of tax loss that's listed within the

3     factual basis in this case includes certain amounts that you

4     paid back after being audited, correct?

5     A.  Yes.

6     Q.  And the amount of restitution that you will owe, the

7     government has agreed, will deduct those amounts from the

8     amount of tax loss.  So while the tax loss is a higher

9     number, around 500,000, you will receive credit for

10    restitution purposes for the amount that you paid as a

11    result of the audits in 2006 and 2012, correct?

12    A.  I understand.

13         MR. LANGNER:  Your Honor, I think those are the

14    significant terms in the plea agreement.

15         THE COURT:  Thank you, Mr. Langner.

16         Mr. Kelly, are there any other provisions that

17    need to be reviewed at this time?

18         MR. KELLY:  None, Your Honor.

19                              **EXAMINATION**

20    BY THE COURT:

21    Q.  Ms. Kroupa, are the terms of the plea agreement, those

22    that have been described to you, as you understand them?

23    A.  They are, Your Honor.

24    Q.  And so, Ms. Kroupa, the government has agreed that if

25    you plead guilty to Count 1, the government will move to

1    dismiss Counts 2 through 6 when you're sentenced on Count 1.

2    If I accept the plea agreement, the judgment in this case

3    will include a dismissal of Counts 2 through 6.  Do you

4    understand that?

5    A.  I understand, Your Honor.

6    Q.  Other than what's contained in the plea agreement and

7    what I have told you, has the government or anyone else made

8    any promises to you in order to get you to plead guilty?

9    A.  They have not, Your Honor.

10   Q.  I want to make sure, Ms. Kroupa, that you understand the

11   impact of the plea agreement on me.  First I want you to

12   understand that although the government and your attorney

13   can make a recommendation about your sentence, I don't have

14   to accept the recommendation.  I do not have to sentence you

15   according to the plea agreement.  Do you understand that?

16   A.  I understand that, Your Honor.

17   Q.  And as I sit here today, I do not know what sentence I

18   will impose on you.  I will not even begin to consider the

19   sentence until a presentence investigation has been

20   completed and I get a presentence investigation report about

21   you.  And because I have no idea what sentence I will

22   impose, neither the lawyers nor anyone else can know what

23   sentence I will impose.  Do you understand?

24   A.  I understand that, Your Honor.

25   Q.  It is possible that I will give you a sentence that is

1    longer than you are expecting or hoping for.  If I give you

2    a sentence that is longer than you are expecting or hoping

3    for, you will not be able to take back or withdraw your

4    guilty plea.  You may be able to appeal the sentence, but no

5    matter what sentence I give you, your guilty plea will

6    stand.  Do you understand that?

7    A.  I understand that, Your Honor.

8    Q.  And your plea agreement discusses the federal sentencing

9    guidelines and I want to emphasize a few things about those

10   guidelines.

11        I'm going to look at the federal sentencing

12   guidelines and decide for myself what they recommend in your

13   case.  What your plea agreement says is not binding on me.

14   I will make my own decision.  Do you understand?

15   A.  I understand that, Your Honor.

16   Q.  Here's what I will do.  I will look to the sentencing

17   guidelines and I will decide what the sentencing guidelines

18   recommend in your case.  I will then look further at the

19   guidelines because sometimes the guidelines themselves

20   recommend a sentence that is below or above the range, and

21   in that case that would be called a departure.  And finally,

22   I will decide whether to follow the recommendation of the

23   sentencing guidelines.  It is just a recommendation.  It's

24   not binding on me .  In fact, I'm required to consider many

25   things in addition to the recommendation of the guidelines

1    when I decide your sentence.

2          So you cannot count on receiving a guideline

3    sentence.  You may get a sentence that's higher than the

4    guidelines recommend or one that's lower than the guidelines

5    recommend.  Do you understand that?

6    A.  I understand that, Your Honor.

7    Q.  Your plea agreement provides that you have accepted

8    responsibility for your criminal conduct, which can entitle

9    you to a reduction in your guideline offense level.  So as

10   long as you testify truthfully during the change of plea

11   hearing, you cooperate with Probation in the presentence

12   investigation, you commit no further acts inconsistent with

13   your acceptance of responsibility and you comply with this

14   agreement, fully identify all assets and make good-faith

15   efforts to make restitution to your victims, the government

16   has indicated that it will move for a two-level reduction so

17   long as you abide by those conditions and do not falsely

18   deny any offense or relevant conduct.

19          In addition, the plea agreement provides that the

20   government will move for an additional one-level reduction

21   because you timely notified the government of your intention

22   to plead guilty.

23          Do you understand that it is entirely up to the

24   government to decide whether to make a motion for the

25   reduction based on your acceptance of responsibility?

1    A.  I understand that, Your Honor.

2    Q.  And do you understand that even if you believe that you

3    satisfied the requirements for a reduction, the government

4    might disagree and choose not to move for that reduction?

5    A.  I understand that, Your Honor.

6    Q.  You understand that even if the government does move for

7    the reduction, I may deny the motion and decide not to

8    reduce your sentence?  And, again, do you understand that no

9    matter what happens, you will not be able to withdraw your

10   guilty plea; do you understand that?

11   A.  I understand that, Your Honor.

12   Q.  After I impose the sentence, the government will have

13   the right to appeal the sentence if the government thinks

14   I've made a mistake or gave you a sentence that was too

15   short.  Do you understand?

16   A.  I understand that, Your Honor.

17   Q.  Likewise, you will have the right to appeal the sentence

18   if you think I have made a mistake or if you think I gave

19   you a sentence that was too long.  But I want to be clear

20   that it is only the sentence that you will be able to

21   appeal.  You will not be able to appeal on the assertion

22   that you are innocent or that certain evidence should have

23   been suppressed.  Do you understand that?

24   A.  I understand that, Your Honor.

25   Q.  Ms. Kroupa, before you can plead guilty pursuant to this

1    plea agreement, I must determine whether there is a factual

2    basis for your guilty plea.  That means that I have to make

3    sure that you committed the crime to which you're pleading

4    guilty.  I am now going to ask Mr. Langner to ask you some

5    questions about the crime.

6                          **EXAMINATION**

7    BY MR. LANGNER:

8    Q.  Ms. Kroupa, I'm going to ask you some questions about

9    the factual basis in this plea agreement.  Okay?

10   A.  All right.

11   Q.  You understand that the factual basis in this plea

12   agreement are the facts that the government would prove, if

13   this case were to go to trial, in order to prove that you

14   were guilty; do you understand that?

15   A.  I understand that.

16   Q.  And you received a copy of this plea agreement and you

17   have gone over this with your attorney, correct?

18   A.  I have.

19   Q.  In fact, you have seen a few different versions of this

20   plea agreement and you have had the opportunity to make

21   corrections or edits as you needed to, correct?

22   A.  I have.

23   Q.  And some of those edits we incorporated and other ones

24   we did not, but we explained where we were not going to make

25   those edits, correct?

1    A.  Correct.

2    Q.  And as you've reviewed this plea agreement, are all of

3    the facts contained in paragraph 2 true and accurate to the

4    best of your knowledge?

5    A.  Yes.

6    Q.  I want to go through those facts in a little more

7    detail.

8            First of all, you were married to Robert Fackler,

9    correct?

10   A.  Still am.

11   Q.  Okay.  During the period of the conspiracy, though, you

12   were married to him, correct?

13   A.  Yes, correct.

14   Q.  And beginning no later than the 2004 tax year and

15   continuing through the 2010 tax year, you and Mr. Fackler

16   filed your federal U.S. income tax returns with the IRS

17   under the designation married filing jointly, correct?

18   A.  Correct.

19   Q.  From 2003 until June of 2014 you were employed as a

20   United States tax court judge, correct?

21   A.  Correct.

22   Q.  And as a tax court judge you heard and decided cases

23   involving tax law issues, including what is required to be

24   reported as income and what constitutes proper business

25   deductions, correct?

1    A.   I did.

2    Q.   Your chambers were located in Washington, D.C.?

3    A.   They were.

4    Q.   During this time your husband, Mr. Fackler, was a

5    self-employed lobbyist and political consultant, correct?

6    A.   Correct.

7    Q.   Mr. Fackler owned and operated a Schedule C entity known

8    as Grassroots Consulting, correct?

9    A.   Correct.

10   Q.   The income of Grassroots Consulting was included as part

11   of your and Mr. Fackler's joint tax returns for the tax

12   years 2004 through 2010?

13   A.   Yes.

14   Q.   And through Grassroots Consulting Mr. Fackler provided

15   those lobbying and consulting services to three primary

16   clients, correct?

17   A.   Correct.

18   Q.   Mr. Fackler's clients paid him as an independent

19   contractor and reported those payments to him on a

20   Form 1099, correct?

21   A.   Correct.

22   Q.   And Mr. Fackler was typically reimbursed for meals by --

23   well, for meals, travel, and other expenses by his clients,

24   correct?

25   A.   That's what I understand.

1    Q.  Is it true, Ms. Kroupa, that there are some facts in

2    this plea agreement that you don't have direct knowledge of?

3    A.  Correct.

4    Q.  And you are agreeing that to the extent that you don't

5    have direct knowledge of any fact that I may cover, you are

6    acknowledging that that fact is true based on the evidence

7    you have seen or conversations with your lawyer, correct?

8    A.  Correct, that's what I understand.

9    Q.  Now, for most of the time between 2004 and 2013 you and

10   Mr. Fackler were residents of Minnesota, correct?

11   A.  Correct.

12   Q.  You owned a house in Plymouth, Minnesota?

13   A.  Correct.

14   Q.  And in addition, from about 2007 until about August of

15   2013 you and Mr. Fackler leased a second house in Easton,

16   Maryland, correct?

17   A.  Correct.

18   Q.  And that house is where you generally resided when you

19   were fulfilling your duties as a tax court judge in

20   Washington?

21   A.  Correct.

22   Q.  Is it true, Ms. Kroupa, that beginning no later than in

23   or about 2002 and continuing through 2012 you conspired with

24   your husband, Robert Fackler, to impede, impair, and

25   obstruct the Internal Revenue Service from correctly

1   ascertaining and computing your joint income taxes?

2   A.  Yes.

3   Q.  Is it true that in or about 2002 you and Mr. Fackler

4   began jointly inflating the purported business expenses

5   deducted by Grassroots Consulting?

6   A.  Yes.

7   Q.  And you did that in order to reduce your income, the

8   income claimed by Grassroots Consulting, which by extension

9   reduced the income taxes that you would owe, correct?

10  A.  Correct.

11  Q.  Is it true that each year Mr. Fackler collected numerous

12  personal expenses paid through his credit cards and

13  Grassroots Consulting's bank account and included them along

14  with his legitimate business deductions on a spreadsheet

15  that purported to summarize all of the business deductions?

16  A.  He did.

17  Q.  Is it true that you collected additional personal

18  expenses from your joint bank account and included them or

19  caused them to be included with the expenses that

20  Mr. Fackler compiled?

21  A.  I did.

22  Q.  Is it true that you and Mr. Fackler, sometimes one or

23  the other of you, then compiled those and provided them to

24  your tax preparer?

25  A.  Yes.

1    Q.  And neither you nor Mr. Fackler told the tax preparer

2    the amounts reflected in the information, spreadsheets, or

3    tax organizers that you gave him included personal expenses

4    that were disguised as business expenses?

5    A.  No.

6    Q.  That fact is true?

7    A.  That fact is true, we did not provide that information.

8    Q.  And by doing that, you thereby significantly and

9    fraudulently increased Grassroots Consulting's business

10   expenses, which then reduced the amount of taxes that you

11   jointly owed to the IRS?

12   A.  Correct.

13   Q.  And on page 4 and page 5 of this plea agreement there is

14   a list of descriptions of specific expenses that were

15   included supposedly as business expenses which were, in

16   fact, personal expenses, correct?

17   A.  Correct.

18   Q.  You've looked at this list and either you know that

19   these are ones that were included or else you have seen

20   evidence to that effect?

21   A.  Correct.

22   Q.  So in total from 2004 through 2010 did you and

23   Mr. Fackler fraudulently deduct at least 500,000 of personal

24   expenses as purported Schedule C business expenses?

25   A.  Yes.

1    Q.  Is it true that as part of the conspiracy, although

2    without your direct knowledge, Mr. Fackler also caused the

3    gross receipts attributable to Grassroots Consulting to be

4    falsely understated by fraudulently deducting the purported

5    business expenses, such as travel and meals, for which he

6    had already been reimbursed?

7    A.  He did.

8    Q.  And that amount totaled at least approximately $450,000,

9    correct?

10   A.  Correct.

11   Q.  As part of the conspiracy is it true that you also

12   falsely reported certain personal expenses as unreimbursed

13   employee expenses incurred in connection with your job as a

14   United States tax court judge?

15   A.  I did.

16   Q.  And there are several examples on page 6 of the plea

17   agreement, such as Nantucket bags, purchases at Barnes &

18   Noble, and others, that you attempted or did deduct as

19   unreimbursed employee expenses, correct?

20   A.  Correct.

21   Q.  Is it also true that as part of the conspiracy you

22   purposely failed to report approximately $44,520 that you

23   received in 2010 in connection with the sale of a parcel of

24   real estate located in South Dakota?

25   A.  I did.

1    Q.  Is it true also that as part of the conspiracy you

2    falsely claimed that approximately $33,031 of cancelation of

3    indebtedness income that you and Mr. Fackler received from

4    Bank of America in 2008 was not taxable because you were

5    financially insolvent, correct?

6    A.  I understand that, yes.

7    Q.  And you actually purposely avoided calculating your net

8    worth, which would have shown that you were not insolvent

9    and therefore could not have taken that deduction, correct?

10   A.  Correct.

11   Q.  Now, in or about 2006 you understand and agree that

12   Mr. Fackler caused false and misleading representations to

13   be made to the IRS tax compliance officer who was conducting

14   an audit of your joint tax returns for the calendar years

15   2004 and 2005?

16   A.  He did.

17   Q.  Specifically, in response to inquiries and requests for

18   documentation relating to Grassroots Consulting, Mr. Fackler

19   caused your tax preparer to represent to the IRS tax

20   compliance officer that the expenses that had been incurred

21   were legitimate, but he simply kept poor records, correct?

22   A.  Correct.

23   Q.  And those representations were false, the expenses --

24   many of the expenses that were listed were personal in

25   nature, correct?

1    A.  Correct.

2    Q.  And you knew that some of the expenses that were

3    incurred in 2004 and 2005 that were deducted on Grassroots

4    Consulting were, in fact, personal expenses, correct?

5    A.  Yes.

6    Q.  And you also assumed that, in order to conceal those

7    crimes, Mr. Fackler would not provide the truth to the IRS,

8    correct?

9    A.  Correct.

10   Q.  Is it true that at the conclusion of the 2006 audit

11   Mr. Fackler and you acknowledged tax deficiencies in the

12   amount of approximately $48,000?

13   A.  Correct.

14   Q.  And you were issued an inadequate records notice by the

15   IRS informing you that you had not been keeping adequate

16   records, correct?

17   A.  Correct.

18   Q.  Is it also true that in or about 2012 you were

19   audited -- your joint tax returns were audited a second

20   time?

21   A.  Correct.

22   Q.  And during that audit you and Mr. Fackler caused false

23   and misleading representations to be made and caused false

24   and misleading documents to be delivered to the IRS revenue

25   agent that was conducting the audit?

1    A.  Yes.

2    Q.  That audit was focused on the tax years 2009 and 2010,

3    correct?

4    A.  Correct.

5    Q.  Specifically, after learning of the audit you and

6    Mr. Fackler reviewed your tax files and removed certain

7    items that were requested by the revenue agent from the tax

8    files because they would reveal the fact that you had been

9    deducting personal expenses, correct?

10   A.  Correct.

11   Q.  And Mr. Fackler provided those documents to your tax

12   preparer knowing that they would then be provided to the IRS

13   as a substantiation of the expenses that you had incurred?

14   A.  He did.

15   Q.  Is it true that during the audit Mr. Fackler prepared

16   cut-and-pasted credit card statements that purported to

17   substantiate certain of the business expenses?

18   A.  He did.

19   Q.  And those cut-and-pasted credit card statements obscured

20   the fact that personal expenses had been deducted as

21   business expenses, correct?

22   A.  Correct.

23   Q.  And during the audit is it true that in response to an

24   inquiry from an IRS revenue agent regarding the $44,520 you

25   received from the South Dakota land sale, you responded and

1   sent an e-mail to your tax preparer falsely and misleadingly

2   informing the tax preparer that the deposit was part of an

3   unrelated inheritance and not income that you received as

4   part of that land sale?

5   A.  I did.

6   Q.  Is it also true that when you and Mr. Fackler learned

7   that the 2012 audit might progress into a criminal

8   investigation, you told Mr. Fackler to maintain, falsely,

9   that he did his taxes and you did yours?

10  A.  I did.

11  Q.  Believing that the investigation would focus solely on

12  the false business deductions, you told Mr. Fackler to tell

13  investigating authorities that you didn't have any role in

14  organizing and preparing Grassroots Consulting's tax

15  returns, correct?

16  A.  Correct.

17  Q.  Now, each year from 2004 through 2010, through the means

18  that we just discussed, you caused your adjusted gross

19  income, taxable income, and total tax to be grossly

20  underinflated, correct?

21  A.  Correct.

22  Q.  And through the means that we just went through, from

23  2004 to 2010 you purposely understated your taxable income

24  by approximately $1 million and purposely understated the

25  amount of tax that you owed by approximately $450 [sic],

1    correct?

2    A.  Correct.

3    Q.  And there's a table listed on page 10 of this plea

4    agreement which lists the approximate federal tax loss and

5    state tax loss for each year from 2004 through 2010.  You

6    acknowledge that those numbers are accurate to the best of

7    your knowledge?

8    A.  To the best of my knowledge.

9            MR. LANGNER:  Your Honor, I believe that's the

10    factual basis for this plea.

11                          **EXAMINATION**

12    BY THE COURT:

13    Q.  I have a bit of a follow-up, Ms. Kroupa.

14            You voluntarily and intentionally joined in the

15    agreement that has been referenced here; is that correct?

16    A.  I did, Your Honor.

17    Q.  And you knew the purpose of the agreement when you

18    joined it?

19    A.  I did, Your Honor.

20            THE COURT:  Mr. Kelly, is there anything further

21    you would like to add or clarify for the record?

22            MR. KELLY:  No, Your Honor.

23            THE COURT:  Mr. Langner, is there anything further

24    that you would like to add or clarify at this time?

25            MR. LANGNER:  No, Your Honor.  I do have a signed

1    copy of the plea agreement if you would like me to hand that

2    up.

3              THE COURT:  Okay.

4         (Document handed to the Court)

5    BY THE COURT:

6    Q.  And Ms. Kroupa, on page 13, this is your signature?

7    A.  It is, Your Honor.

8    Q.  Ms. Kroupa, are you making this plea of guilty

9    voluntarily and of your own free will?

10   A.  I am, Your Honor.

11   Q.  Has anyone forced you or threatened you or coerced you

12   or done any harm to you or any other person to get you to

13   plead guilty?

14   A.  No.

15   Q.  Are you going to plead guilty because you are, in fact,

16   guilty of the crime charged?

17   A.  I am, Your Honor.

18             THE COURT:  Mr. Kelly, is there anything else that

19   you would like me to cover with Ms. Kroupa before she enters

20   her guilty plea?

21             MR. KELLY:  No, Your Honor.

22             THE COURT:  Mr. Langner, is there anything else

23   that you would like me to cover with Ms. Kroupa before she

24   enters her guilty plea?

25             MR. LANGNER:  No, Your Honor.

1    BY THE COURT:

2    Q.  Ms. Kroupa, do you have any questions for me or for

3    Mr. Kelly before I ask for your plea?

4    A.  I do not, Your Honor.

5    Q.  Do you understand all of the constitutional rights that

6    I have gone through today and gone over with you?

7    A.  I do, Your Honor.

8    Q.  Do you knowingly, intelligently, and voluntarily give up

9    those rights?

10   A.  I do, Your Honor.

11   Q.  And I have the plea agreement that has been signed.

12   This is indeed your signature on the plea agreement, the

13   middle signature, Diane Kroupa?

14   A.  It is, Your Honor.

15   Q.  Diane L. Kroupa, how do you plead to Count 1 of the

16   indictment, which alleges that you conspired to defraud the

17   United States in violation of Title 18, United States Code,

18   Section 371, do you plead guilty or not guilty?

19   A.  I am guilty.

20        THE COURT:  I find that the defendant, Diane L.

21   Kroupa, is mentally competent and capable of entering an

22   informed plea.

23        I find that Ms. Kroupa is aware of the nature of

24   the charges against her, the nature of these proceedings,

25   and the consequences of her guilty plea.

1          I find that Ms. Kroupa's guilty plea is free,

2     voluntary, knowing, and informed.

3          I find that the guilty plea is supported by

4     independent facts in the record establishing all of the

5     elements of the offense listed in Count 1 of the indictment.

6          Therefore, Diane L. Kroupa, I accept your guilty

7     plea and I adjudge you guilty as charged in Count 1 of the

8     indictment.

9          I want to explain to you, Ms. Kroupa, what will

10    happen next.  The probation officer is going to conduct an

11    investigation and prepare a report that will help me decide

12    your sentence.  We refer to that as a presentence

13    investigation report.

14         The probation officer will interview you as part

15    of that investigation and you will be required to give

16    information for the report.  Your attorney, Mr. Kelly, may

17    be present when you are interviewed.

18         After the report is prepared, you will have a

19    chance to read it and to discuss it with your attorney.  If

20    there's anything in that report that you think is incorrect

21    or unfair or if something has been left out of the report

22    that you want me to know, you will have a chance to file

23    objections to the report.

24         Before I decide on your sentence, I will read not

25    only the report, but any objections that you or the

1    government have made, as well as any other papers that you

2    or the government have filed.

3            We will then have a sentencing hearing, and during

4    that sentencing hearing I will impose your sentence.  Before

5    I do that I will give both you and your attorney a chance to

6    speak.

7            Do you understand?

8            THE DEFENDANT:  I do, Your Honor.

9            THE COURT:  Does the government have any objection

10   to Ms. Kroupa remaining free under the present conditions of

11   release?

12           MR. LANGNER:  No, Your Honor.

13           THE COURT:  Ms. Kroupa, all of the conditions that

14   you previously were released on will continue to apply.  You

15   must follow those conditions.  If I learn that you have

16   violated any of those conditions, I may order that you be

17   incarcerated until sentencing.  Do you understand?

18           THE DEFENDANT:  I do, Your Honor.

19           THE COURT:  Ms. Kroupa, you will be informed of

20   the date of your sentencing hearing.  You're legally

21   required to attend that hearing.  Failure to appear at your

22   sentencing hearing is itself a crime for which you could be

23   prosecuted.  Do you understand?

24           THE DEFENDANT:  I understand.

25           THE COURT:  Is there anything further that we need

1      to take up at this time, Counsel?

2                MR. LANGNER:  I don't believe so, Your Honor.

3                MR. KELLY:  Nothing, Your Honor.

4                THE COURT:  Okay.  Then, Ms. Kroupa, I wish you

5      good luck and you will be reached by the appropriate

6      authorities to continue with the proceedings in this matter.

7                THE DEFENDANT:  Thank you, Your Honor.

8                THE COURT:  We are in recess.

9          (Court adjourned at 2:23 p.m.)

10                                *      *      *

11

12

13

14          I, Lori A. Simpson, certify that the foregoing is a

15      correct transcript from the record of proceedings in the

16      above-entitled matter.

17

18                Certified by:   *s/ Lori A. Simpson*

19                                Lori A. Simpson, RMR-CRR

20

21

22

23

24

25